UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

Nº 05-CV-3374 (JFB)

———————

MARK GARRETT,

Petitioner,

VERSUS

JOSEPH SMITH,
SUPERINTENDENT,
SHAWANGUNK C.F.,

Respondent.

———————

MEMORANDUM AND ORDER
August 8, 2006

———————

JOSEPH F. BIANCO, District Judge:

Mark Garrett petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his state conviction. Petitioner alleges the following: (1) the State failed to prove his guilt beyond a reasonable doubt; (2) his statements to the police should have been suppressed because he was illegally detained; (3) his statements should have been suppressed because his waiver of rights was invalid since he was affirmatively misled into thinking the interrogation was based on a parole warrant rather than a homicide investigation; (4) the trial court's unbalanced marshaling of the evidence on the felony murder count deprived him of a fair trial; and (5) his sentence was harsh and excessive.

For the reasons set forth below, the petition is denied.

I. BACKGROUND

A. The Underlying Facts

The following facts are adduced from the trial record.

On July 18, 1998, at approximately 8:50 p.m., Suffolk County Police were called to investigate an overwhelming odor in a neighborhood in Wyandanch. (Trial Transcript (hereinafter "TT") at 238-239.) The police discovered a dead body bundled up in some sheets and dark colored plastic behind the fence of petitioner's mother's, Ora Garrett's, home. (*Id*. at 242-46.) The body

was transported to the Medical Examiner's Office where it was determined that the body was an unidentified girl bound with electrical wire and clothed in red colored jeans and a light colored shirt. (*Id*. at 479-483.)

Homicide detectives interviewed Frank Garrett, petitioner's brother, and his girlfriend, Janice Cooper, and discovered that Ms. Cooper's thirteen year-old daughter, Lytecia Cooper, had been missing for fourteen days. Ms. Cooper's two sons, Stephan Harbison and Michael Cooper, informed the detectives that Lytecia was last seen with petitioner. (TT at 313-14, 320.)

On July 19, detectives Vincent O'Leary and Eugene Walsh returned to Ora Garrett's home, where she gave them a tour of the house. Detective O'Leary observed electrical wires in the basement that resembled the wires found on the dead body. (TT at 483-88.) The detectives re-interviewed Ms. Cooper and confirmed that Lytecia owned red jeans similar to the pants found on the dead girl. (*Id*. at 489-90, 856.) Ms. Cooper also provided information regarding Lytecia's dental records, which were used to positively identify the dead body as Ms. Cooper's daughter, Lytecia, on July 21. (*Id*. at 500, 765-66.)

Detective O'Leary learned that the New York Division of Parole had issued a warrant for petitioner's arrest on June 17, 1998. On July 20, 1998, Parole Officer Anthony Mayers confirmed that the warrant was still in effect. (Hearing Transcript (hereinafter "HT") at 24-25.)

On July 23, 1999, the detectives arrested petitioner and transported him to the Homicide Bureau in Police Headquarters in Yaphank. (TT at 506-08, 515-17.) He was placed in an interview room and his handcuffs were removed. (*Id*. at 519.) The detectives advised petitioner of his constitutional rights by reading them from a rights card, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and petitioner waived each right by initialing his consent. (*Id*. at 521-23.) He also consented to a police search of the house in which he was arrested. (*Id* at 526-27.) The detectives asked petitioner general questions regarding his employment, parole and family, and when the questions focused more on Lytecia Cooper, his responses became increasingly evasive and contradictory. (*Id*. at 528-39.) Throughout the interview, petitioner was permitted to eat, drink, and use the bathroom. (*Id*. at 545, 582, 589.) During the interrogation, petitioner told Detective O'Leary that he had gone to his mother's house with Lytecia and "wanted to have sex with her." (*Id*. at 542, 544-45.) He "kind of grabbed her," she "pulled away," and he picked her up. *Id*. Then "he kind of snapped." He "pulled her up in . . . a full nelson . . . she just then went limp . . . she was kind of lifeless and he dropped her on the ground." *Id*. Petitioner further stated that he left the scene, and when he returned, he tied Lytecia up with electrical wire, wrapped her in sheets and a plastic bag, and threw her body over the fence. (*Id*. at 542-43.)

Petitioner proceeded to give Detective O'Leary a sworn written statement in which he stated: "I wanted to have sex with her and I was grabbing at her chest and she was pulling away. She even got away from me, but I was able to get a hold of her again . . . I remember grabbing her tight around her chest and lifting her up off the ground. I did that a lot of times. At one point I had her in a full nelson but mainly I was squeezing her around the chest. I wanted to have sex with her but she wouldn't calm down. I was squeezing her tight. I may have gotten too rough. I might have just snapped. I don't know. Lytecia

2

went limp in my arms. I put Lytecia on the ground and I tried to wake her up. She was not moving at all." (*Id.* at 556.) Petitioner remained in prison until the trial.

### B. Pre-Trial and Trial Procedures

Petitioner was charged with three counts of Murder in the Second Degree pursuant to N.Y. PENAL LAW §§ 125.25[1], [2], and [3].

The Suffolk County Court held a pre-trial *Dunaway/Huntley* hearing to determine whether there was probable cause to arrest petitioner and whether petitioner's statements were voluntary and admissible at trial. (HT 1-2.) The hearing court held that there was probable cause to arrest petitioner based on a valid parole warrant relating to petitioner's violation of parole in existence at the time of petitioner's arrest. (Hearing Decision at 7.) The court held that even if there had been no parole warrant, the detectives possessed information sufficient for the requisite probable cause to arrest petitioner. (*Id.*) The hearing court also held that petitioner had knowingly and voluntarily waived his rights and that the administering of his *Miranda* rights had taken place twice. (*Id.*) Thus, petitioner's waiver of his rights was valid, and his subsequent statements were voluntary and admissible at trial. (*Id.*)

Petitioner was tried before a jury and convicted of one count of Murder in the Second Degree pursuant to N.Y. PENAL LAW § 125.25[2], Depraved Mind Murder, and one count of Murder in the Second Degree pursuant to N.Y. PENAL LAW § 125.25[3], Felony Murder. He was sentenced to two concurrent indeterminate terms of 25 years to life imprisonment.

### C. State Appeals and Post Judgment Motions

On January 12, 2004, petitioner appealed his conviction to the Appellate Division, Second Department, raising five claims: (1) the State failed to prove his guilt beyond a reasonable doubt; (2) his statements to police during an unauthorized detention should have been suppressed; (3) his statements to police should have been suppressed because his waiver of rights was invalid since he was affirmatively misled into thinking the interrogation was based on a parole warrant rather than a homicide investigation; (4) the trial court's unbalanced marshaling of the evidence on the felony murder count deprived him of a fair trial; and (5) his sentence was harsh and excessive.

On June 28, 2004, the Appellate Division, Second Department, affirmed petitioner's judgment of conviction, holding that there was probable cause for petitioner's arrest, petitioner voluntarily made incriminating statements after waiving his *Miranda* rights, the sentence imposed was not excessive, the evidence was legally sufficient to establish the petitioner's guilt beyond a reasonable doubt, the verdict was not against the weight of the evidence, and the remaining contentions were unpreserved for appellate review. *People v. Garrett*, 8 A.D.3d 676 (N.Y. App. Div. 2004).

Leave to appeal was denied by the Court of Appeals by Certificate dated August 23, 2004. *People v. Garrett*, 3 N.Y.3d 674 (2004).

### D. The Instant Action

On July 11, 2005, petitioner timely filed a *pro se* petition with this Court for writ of habeas corpus, raising the five claims that were submitted on appeal to the Appellate

3

Division, Second Department and described above. An opposition was filed on November 1, 2005. Petitioner did not file a reply. Oral argument was held by telephone on August 1, 2006.

## II. DISCUSSION

### A. The Standard of Review

To determine whether a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No 104-132, 110 Stat. 1214, which provides, in relevant part:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review– "a federal *habeas* court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### B. Exhaustion

The State contends that petitioner failed to exhaust his state remedies because his application for leave to appeal to the New

4

York Court of Appeals failed to particularize any federal claims.

Under 28 U.S.C. § 2254(b)(1), a state prisoner must exhaust available state remedies before seeking a federal writ of habeas corpus. The prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

In the present case, petitioner appealed his conviction to the Appellate Division. After the Appellate Division affirmed, he sought leave to appeal to the New York Court of Appeals in a letter from his attorney to the Chief Judge. The letter concluded:

> Enclosed herewith please find a copy of the decision and order of the Appellate Division and copies of both Appellant's and Respondent's briefs/or motion and response in the above-entitled matter. Appellant is appealing from each and every issue raised in his appeal to the Appellate Division.

(Letter from Monroe Semble to Chief Judge, dated July 13, 2004.) Counsel for petitioner sent a follow-up letter dated August 3, 2004 to the Court of Appeals after the case was assigned to Judge Smith. The letter addressed petitioner's illegal detention claim in detail and failed to mention any of his other claims. The Court of Appeals denied leave to appeal.

In requesting the Court of Appeals to consider "each and every issue raised in his appeal to the Appellate Division," petitioner fairly presented all his claims to the highest state court.[1] *See Morgan v. Bennett*, 204 F.3d 360, 370-71 (2d Cir. 2000) (finding that petitioner had fairly presented his claims in state court to meet exhaustion requirement when he stated in his application for leave to appeal: "We request this Court to consider and review all issues outlined in defendant-appellant's brief.").

The State contends that petitioner failed to allege any federal claims in his appellate brief or application for leave to appeal.[2] However, not expressly mentioning "due process" or an Amendment of the Constitution does not indicate the lack of a federal claim. *See Cosey v. Walsh*, No. 02 Civ. 6251 (SAS), 2003 WL 1824640 at *3 (S.D.N.Y. April 8, 2003) (construing a due process claim for a coerced

---

[1] Although petitioner's follow-up letter only addressed his illegal detention claim, it does not eliminate the other issues which petitioner expressly requested the Court of Appeals to review. These facts are similar to *Morgan v. Bennett*, 204 F.3d 360 (2d Cir. 2000). In *Morgan*, the Court found that even though the petitioner's follow-up letter to the New York Court of Appeals addressed only one claim, it did not affect petitioner's other claims because, in his first letter, he had previously requested the Court to consider and review all issues outlined in the briefs. Here, petitioner expressly appealed, in his first letter, every issue raised in his state appellate briefs. Furthermore, petitioner's counsel stated in the follow-up letter that its purpose was to "support [] our application for leave to appeal on behalf of appellant," suggesting that the follow-up letter was to be considered as a supplement to the initial letter. Thus, it cannot be inferred that the New York Court of Appeals would construe counsel's second letter as eliminating the issues as to which petitioner had already expressly requested review. *See Morgan*, 204 F.3d at 371.

[2] At oral argument, however, the State conceded that there were at least two federal claims raised in the petition.

5

guilty plea claim despite petitioner's failure to explicitly invoke the "due process" clause or Fifth Amendment). A "petitioner may alert the state court to the constitutional nature of a claim without referring chapter and verse to the U.S. Constitution." *Ramirez v. Attorney Gen. of State of N.Y.*, 280 F.3d 87, 95 (2d Cir. 2001) (citing *Daye v. Attorney Gen.*, 696 F.2d 186, 194 (2d Cir. 1982)). Ways in which a petitioner may alert the state court of federal claims include: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* In the present case, petitioner alleges constitutional violations by relying on federal cases or asserting claims in terms which call to mind specific rights protected by the Constitution. In any event, petitioner alleges a pattern of facts that is well within the mainstream of constitutional litigation: insufficiency of evidence to support a conviction being a violation of the Due Process Clause of the Fourteenth Amendment, *Thompson v. City of Louisville*, 362 U.S. 199 (1960), unlawful arrest in violation of the Fourth Amendment, *Mapp v. Ohio,* 367 U.S. 643 (1961), and involuntary confession, *Mincey v. Arizona*, 437 U.S. 385 (1978).

Thus, petitioner has fairly presented his claims to New York courts and exhausted all available state remedies. The Court now turns to the merits of petitioner's claims.

### C. Insufficient Evidence Claim

Petitioner claims that his conviction was a violation of the Fourteenth Amendment because there was insufficient evidence to prove his guilt beyond a reasonable doubt.

The law governing habeas relief from a state conviction is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). A "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04 Civ. 0856 (JG), 2004 WL 3088666 at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("We review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir. 2005) ("'in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'") (quoting *Jackson*, 443 U.S. at 324). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994).

Petitioner argues that there was insufficient evidence to support a finding of

6

the specific elements of depraved indifference murder and felony murder. Specifically, with regard to depraved indifference murder, he contends that he was unaware that the force he was applying could be lethal. With regard to felony murder, petitioner claims that he did not intend to rape the victim. Additionally, petitioner claims that: (1) his statements to the police were involuntary and inadmissable; (2) other than his statements to the police, there was no physical evidence of his involvement in the victim's death; and (3) the testimony of Stephan and Michael Cooper should be disregarded. For the following reasons, this Court finds that there was sufficient evidence for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find petitioner guilty beyond a reasonable doubt of the charges for which he was convicted.

1. Depraved Indifference Murder

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Under New York law, a conviction for depraved indifference murder must be supported by evidence that "under circumstances evincing a depraved indifference to human life [defendant] recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person." N.Y. PENAL LAW § 125.25[2]. A person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk. N.Y. PENAL LAW § 15.05[3]. The prosecution must show that the actor's reckless conduct is imminently dangerous and presents a grave risk of death. *People v. Roe*, 74 N.Y.2d 20, 24 (1989).

Petitioner claims that because he was unaware that the force he was applying could be lethal, he did not possess depraved indifference to human life. However, the New York Court of Appeals has clarified that the requirement of conduct occurring "under circumstances evincing a depraved indifference to human life" refers to "the wantonness of defendant's acts." *Roe* at 24. This is not a *mens rea* element which focuses upon the subjective intent of the defendant, as it is with intentional murder. *Id*. The mental state required for murder under N.Y. PENAL LAW § 125.25[2] is recklessness. *Id.* Proof of defendant's subjective mental state is relevant to the element of recklessness, but "evidence of the actor's subjective mental state . . . is not pertinent to a determination of the additional element required for depraved indifference murder: whether the objective circumstances bearing on the nature of a defendant's reckless conduct are such that the conduct creates a very substantial risk of death." *Id.*; *see also People v. Atkinson*, 799 N.Y.S.2d 125, 134-35 (N.Y. App. Div. 2005) ("[A] reckless killing will rise to the level of depraved indifference murder in instances where the objective circumstances surrounding the defendant's reckless conduct [are] such as to elevate a substantial and unjustifiable risk of death to an imminently dangerous, very substantial risk, manifestly destined to result in death."). Such an assessment of the objective circumstances evincing the actor's depraved indifference to human life is a qualitative judgment to be made by the trier of facts. *Roe*, 74 N.Y.2d at 25.

Here, a rational fact finder, viewing the evidence in the light most favorable to the prosecution, and drawing all permissible inferences in the prosecution's favor, could have found that the objective circumstances surrounding the defendant's reckless conduct were such as to constitute an imminently

7

dangerous, very substantial risk, manifestly destined to result in death. *See Atkinson*, 799 N.Y.S.2d at 134. A reasonable jury could find from petitioner's confession that he possessed the reckless mental state required by N.Y. PENAL LAW § 125.25[2]. Petitioner realized the victim was only thirteen years old (HT at 62.), grabbed her "in a full nelson" and lifted her up off the ground multiple times, squeezing her tight and around the chest. (TT at 556.) In his own words, "I may have gotten too rough. I might have just snapped." (*Id.*) In light of these facts, a reasonable jury could also find that the objective circumstances surrounding petitioner's conduct created a very substantial risk of death, evincing a depraved indifference to human life. Furthermore, the medical examiner determined the cause of the victim's death as mechanical asphyxiation[3] (*Id.* at 801), and New York courts have recognized murder by asphyxiation as sufficient evidence of depraved indifference murder. *See People v. Covich*, 241 A.D.2d 932 (N.Y. App. Div. 1997); *People v. Garrette*, 223 A.D.2d 749 (N.Y. App. Div. 1996); *People v. Maynard*, 183 A.D.2d 1099 (3d Dep't 1992); s*ee also People v. Solomon*, 172 A.D.2d 781 (N.Y. App. Div. 1991); *People v. Robinson*, 205 A.D.2d 836 (N.Y. App. Div. 1994); *People v. Scott*, 294 A.D.2d 661 (N.Y. App. Div. 2002); *People v. Elliott*, 288 A.D.2d 907 (N.Y. App. Div. 2001). For the foregoing reasons, petitioner's claim that there was insufficient evidence to convict him of depraved indifference murder is without merit.

2. Felony Murder

Petitioner challenges his conviction of felony murder by claiming that there was no evidence that he attempted to rape the victim. Under New York law, in order to support a conviction for felony murder, it need only be established that the defendant intended to commit the underlying felony and, in the course and furtherance of that felony, caused the victim's death. *People v. Myers*, 161 A.D.2d 808, 808-09 (N.Y. App. Div. 1990); *see* N.Y. PENAL LAW § 125.25[3]. In the instant case, to convict petitioner of felony murder, a jury must have found a specific intent by petitioner to forcibly compel the victim to engage in intercourse without consent and that in the course of and in furtherance of the attempted commission, petitioner caused the death of the victim. *See People v. Hamilton*, 256 A.D.2d 922, 923 (N.Y. App. Div. 1998), *lv. den.* 93 N.Y.2d 874 (1999). Here, petitioner's confession establishes his specific intent to commit rape and his actions to carry out that intent:

---

[3] Petitioner disputes the cause of the victim's death, contending that the testimony given by his expert witness, Dr. Lorne Thanning, regarding the cause of Lytecia's death was more persuasive than the testimony of the State's expert witness, Dr. Stuart Dawson. At oral argument, petitioner also attacked the credibility of Dr. Dawson's testimony by pointing to the fact that, in a copy of a letter to the District Attorney, Dr. Dawson changed the cause of death from "probable mechanical asphyxia" to "mechanical asphyxia." Furthermore, petitioner claimed that Dr. Dawson's testimony at trial was unreliable because he lost his paperwork while he was at lunch during the trial. Credibility determinations may not be revisited by federal courts in a habeas corpus proceeding, *Copeland v. Walker*, 258 F. Supp. 2d 105, 120 (E.D.N.Y. 2003), and it is well established that a federal habeas court may not weigh conflicting testimony and must presume that any conflicting testimony was resolved in favor of the prosecution. *See Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)). The jury apparently gave more weight to Dr. Dawson's testimony, and this Court must defer to the jury's assessment of this issue.

> At my mother's house Lytecia and I talked some more. I wanted to have sex with her and I was grabbing at her chest and she was pulling away. She even got away from me, but I was able to get a hold of her again.

(TT at 556.) Thus, a rational juror could find that petitioner possessed the intent to engage in sexual intercourse with the victim and engaged in acts to reach that end. Accordingly, petitioner's claim is without merit.

### 3. Additional Claims

Petitioner then argues that the case rested solely on his confession and that there was no physical evidence of his involvement in the murder.[4] This argument is without merit. "A habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995)). Petitioner's confession is strongly corroborated by the circumstantial evidence presented, including the unique black electrical wire wrapped around the victim being similar to the wiring found in petitioner's mother's home, the similarity between the sheet used to wrap the victim's body and the sheets in petitioner's mother's home, petitioner's relationship with the victim, the testimony that the victim was the last person seen with petitioner, and the location of the murder at petitioner's mother's house. Thus, the physical evidence in conjunction with the confession was sufficient for a rational jury to find petitioner guilty of murder.

In addition, petitioner attacks the credibility of the testimony of Janice Cooper's two boys, Stephan and Michael, who claimed that Lytecia was last seen with petitioner. As noted earlier, it is well established that a habeas court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon*, 717 F. Supp. at 979 (citing *Zabare*, 871 F.2d at 286). A federal habeas court must "resolve all issues of credibility[] in favor of the jury's verdict." *United States v. Reyes*, 157 F.3d 949, 955 (2d Cir. 1998); *see also Copeland,* 258 F. Supp. 2d at 120 ("[C]redibility determinations are exclusively the domain of the trier of fact."). Therefore, petitioner's challenge to the witnesses' credibility cannot support a claim of legal insufficiency on habeas review.

Accordingly, it cannot be said that the adjudication of petitioner's claim of insufficient evidence in state court resulted in a decision that violated any of the standards that are enumerated in 28 U.S.C. § 2254(d). Therefore, petitioner's claim of insufficient evidence is without merit.

### D. Suppression of the Confession

Petitioner argues that his confession to the police should have been suppressed because (1) his detention was illegal because the police lacked probable cause to arrest him on the homicide charge and his detention as a parolee was a violation of the regulations adopted by the Division of Parole, and (2) his confession was involuntary because he was affirmatively misled by the police regarding the nature of his interrogation. As set forth below, petitioner has not demonstrated that

---

[4] Petitioner brings a separate claim concerning the voluntariness of his confession, which is addressed in detail below, and is also without merit.

9

the state court unreasonably applied federal law, nor did he demonstrate that the decision resulted in an unreasonable application of the facts, as required under the AEDPA.

### 1. Illegal Detention Claim

Petitioner claims that his confession should have been suppressed because it was obtained during an illegal detention. Specifically, petitioner argues that the police did not have probable cause to arrest him for homicide and his detention in a homicide interrogation room was a violation of the regulations of the Division of Parole. *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 8004.2 (2005).

Under *Stone v. Powell*, 428 U.S. 465 (1976), this Court is barred from reviewing petitioner's Fourth Amendment claim. "[A] federal habeas corpus court may not review a Fourth Amendment claim, such as illegal detention, 'where the State has provided an opportunity for full and fair litigation' of the claim." *McNeal v. Rdo*, No. 88 Civ. 3435 (MGC), 1988 WL 108440 at *3 (S.D.N.Y. 1988) (citing *Stone*, 428 U.S. at 494). In the Second Circuit, a federal court on habeas review may only review petitioner's Fourth Amendment violation claim if "(a) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Mejias v. Allard*, No. 03 Civ. 5195 (NGG)(LB), 2006 WL 119033 at *20 (E.D.N.Y. Jan. 13, 2006) (citing *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). The Second Circuit has approved New York's corrective procedure, embodied in N.Y. CRIM. PROC. LAW § 710, as facially adequate to redress alleged Fourth Amendment violations. *See Capellan*, 975 F.2d at 70 n.1. Here, petitioner challenged the constitutionality of his detention at both the pre-trial suppression hearing and on appeal to the Appellate Division. Thus, having availed himself of New York's corrective procedures regarding his Fourth Amendment claim, petitioner has had an opportunity for full and fair litigation of the claim and may not raise it on federal habeas review. In any event, the illegal detention claim has no merit based on the parole warrant.

### 2. Voluntariness of Confession

Petitioner further claims that his confession should be suppressed because it was involuntary. Specifically, he contends that because the homicide detectives affirmatively misled him regarding the subject matter of the interrogation, his waiver of his *Miranda* rights was invalid and his confession should have been suppressed.[5]

---

[5] At oral argument, petitioner also alleged police brutality, contending that at his arraignment he had bruises from the use of a stun gun. After oral argument, this Court received a letter from petitioner dated August 2, 2006, attaching notes from a court ordered examination of petitioner that was conducted on July 31, 1998. To the extent petitioner attempted to raise this police brutality claim at oral argument as evidence that his confession was not voluntary, that claim must fail. As an initial matter, although petitioner referred to physical brutality in the facts section of his state appellate brief, he only argued involuntariness based upon alleged misleading statements made by the police. Nevertheless, the Court has considered this physical coercion argument in considering the totality of the circumstances relating to the voluntariness of the confession and the Court finds there is insufficient basis to disturb the finding of voluntariness despite petitioner's allegation of police brutality. Judge Braslow, at the arraignment, commented that he saw only "one small mark on the top of [petitioner's] shoulder." (Arraignment Transcript at 5.) Petitioner was then physically examined at the Suffolk County Jail, where it was determined that the six or seven circular marks of less than 1/4 inch in diameter

The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997) (citing *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991)); *see also Nova v. Bartlett*, 211 F.3d 705, 707 (2d Cir. 2000); *Mincey v. Arizona*, 437 U.S. 385, 396 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; "[i]instead, the Court is under a duty to make an independent evaluation of the record"). Factual questions underlying a legal determination are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Nelson*, 121 F.3d at 833. However, the Second Circuit has noted that "the statutory presumption refers to historical facts, that is, recitals of external events and the credibility of the witnesses narrating them." *Id.* (citation and internal quotation omitted). Thus, "[i]f the material facts were not adequately developed at the State court hearing or the District Court finds that the factual determination is not fairly supported by the record, the presumption of correctness is set aside." *Id.* (citation and internal quotation omitted).

When evaluating the voluntariness of a confession, no one factor is determinative; rather, the totality of the circumstances must be evaluated. *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988). The factors to be considered include (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials. *Id.* at 901-02.

---

appeared to be healed scars, similar to the type of scarring one might get from an infection rash or pimple. (Suffolk County Police Report dated July 31, 1998.) The examiner also determined that the swelling around petitioner's ankles was due to Myxedema, a secondary complication to thyroid disease, which petitioner, in fact, has. (*Id.*)

Here, there is ample evidence to support the Appellate Division's determination that petitioner voluntarily made incriminating statements after being advised of his *Miranda* rights. *Garrett*, 8 A.D.3d at 676. The factual findings of the New York courts are presumed to be correct because they were made after extensive development of the material facts and were supported by the record. Petitioner was familiar with the justice system and admitted to having a criminal history since he was nineteen years-old. (HT at 43.) The conditions of petitioner's interrogation were not coercive. He was questioned in an interview room; he was not handcuffed (*Id.* at 29); and the interrogation was interrupted repeatedly for petitioner to eat, drink, and use the bathroom. (*Id.* at 66-67, 88-89, 98, 103, 232, 267, 276.) The police advised petitioner of his *Miranda* rights prior to questioning, and petitioner waived each right and indicated his understanding of the rights by signing the rights card. (*Id.* at 29-37.) Before he gave his written statement, petitioner again waived his rights after Detective O'Leary advised him of his rights. (*Id.* at 67-78.)

Petitioner argues that his waiver of *Miranda* rights was invalid because the police affirmatively misled him by telling him they were arresting him on a parole warrant when they actually intended to interrogate him regarding the homicide. This claim is without merit. The police did not lie to the petitioner when they arrested him on the authority of an active parole warrant that had been issued one month earlier. (*Id.* at 24-25). Although they did not inform petitioner that they would be questioning him regarding the homicide, the Supreme Court has held that mere silence as to the subject matter of an interrogation is insufficient to invalidate a suspect's waiver of *Miranda* rights. *Colorado v. Spring*, 479 U.S. 564, 576 (1987). Furthermore, affirmative misrepresentation by police in an interrogation, without more, is insufficient to render a confession involuntary. *See Dallio v.*

*Spitzer*, 170 F. Supp. 2d 327, 340 (E.D.N.Y. 2001) ("The fact . . . that the police lie to a suspect to elicit his confession does not necessarily render it involuntary."). Rather, the Court must consider the totality of the circumstances. *Id.* In particular, the question is whether the confession was the product of a free and unconstrained choice and whether police conduct overbears defendant's will to resist. *Green*, 850 F.2d at 900.

In the instant case, the totality of the circumstances do not suggest that petitioner's confession was the product of conduct that would overbear his will to resist. Rather, petitioner's confession was "the product of an essentially free and unconstrained choice by its maker." *Id.* The police informed petitioner that he was being arrested in accordance with a valid parole warrant. (HT at 24-25.) Petitioner waived his constitutional rights before the interrogation. The police then asked him general questions, and petitioner first made incriminating statements in response to being confronted with his contradictory answers to these questions. (*Id.* at 61-65.) Petitioner confessed and agreed to give a written statement. Detective O'Leary advised him a second time of his constitutional rights, which petitioner waived. (*Id.* at 67-78.) Petitioner refused to have his confession videotaped and signed the Video Refusal Form. (*Id.* at 104-108.) When he waived his rights a second time, he was aware that the subsequent questions and his written statement would concern the homicide. Even if the detectives had affirmatively misled him regarding the subject matter of their questioning in the first instance, petitioner was fully aware of the nature of the interrogation by the time he waived his rights a second time. Accordingly, this Court finds that petitioner's confession was voluntary, and his claim is without merit.

In sum, petitioner failed to show that the material facts were not adequately developed at the state court hearing or that the record does not fairly support the state court's factual determinations. *Nelson*, 121 F.3d at 834. Moreover, petitioner has not established any of the other circumstances enumerated in 28 U.S.C. § 2254(d). Therefore, there is no basis for habeas relief on his claim that his confession was involuntary.

E. Trial Court's Unbalanced Marshaling of Evidence

Petitioner next contends that the trial court marshaled the evidence in an unbalanced manner, depriving him of a fair trial. Specifically, petitioner claims that the trial court failed to refer to any defense arguments in support of his innocence of felony murder.

As a threshold matter, this Court is procedurally barred from reviewing this claim. "The Second Circuit has held that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'" *Mejias,* 2006 WL 119033 at *9 (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 2000)). Here, the Appellate Division found that the claim of unbalanced marshaling of the evidence was unpreserved for appellate review and, in any event, was without merit. *People v. Garrett*, 8 A.D.3d 676, 677 (2d Dept.), *lv. denied*, 3 N.Y.3d 674 (2004). Thus, petitioner is procedurally barred from obtaining federal habeas review on this issue.

Even assuming *arguendo* that petitioner's claim that the trial court's unbalanced marshaling of the evidence deprived him of a fair trial is cognizable in federal court, it is without merit. The Second Circuit has articulated the standard for federal review of state court jury instructions. *See Davis v. Strack*, 270 F.3d 111 (2d Cir. 2001). When

contesting an alleged error in a jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Id.* at 123 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). The question is not whether the trial court gave a faulty instruction, but rather, "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* However, "[w]hat due process requires will often depend on what state law is." *Id.* Thus, in determining whether petitioner's federal due process rights were violated, the first step is determining whether petitioner was deprived of a jury instruction to which he was entitled under state law. *Id.*

Here, petitioner has not satisfied the first prong of the *Davis* inquiry because under New York law, the trial court is not required to marshal the evidence, except to the extent necessary to explain the application of the law to the facts. *See People v. Saunders*, 64 N.Y.2d 665, 667 (1984); N.Y. CRIM. PROC. LAW § 300.10(2). The same is true of the federal system. *See United States v. GAF Corp.*, 928 F.2d 1253, 1263 (2d Cir. 1991) ("[T]he trial court is not required to review or marshal the evidence for the jury and has broad discretion to decide which facts, if any, it will mention in its comments to the jury.").

In any event, the trial record shows that the trial judge referred to several of petitioner's defense arguments including the expert testimony regarding the cause of death. The trial court included in its jury instruction:

> The petitioner denies this and contends . . . that the police singled out petitioner as a suspect and refused to waiver from their theory; that Lytecia Cooper's family members are not credible witnesses; that the prosecution's theory of the alleged altercation between Lytecia Cooper and the petitioner is not believable; that Detective O'Leary's testimony was not credible; that the petitioner's alleged confession was not logical and consisted largely of information that the police obtained from other sources; that there's no basis in fact for the medical examiner's opinion as to the cause of death; that Lytecia Cooper died as a result of an unaided abortion and he points to Dr. Thanning's testimony to that effect.

(TT at 1151-52.) The Second Circuit has noted that the marshaling of evidence is not "subject to an equal time requirement." *Johnson v. Scully*, 727 F.2d 222, 227 (2d Cir. 1984). Furthermore, nothing in the trial judge's jury instruction could be construed as creating an appearance of impartiality, and the Appellate Division did not unreasonably apply clearly established federal law in finding this claim "without merit." *People v. Garrett*, 8 A.D.3d 676, 677 (N.Y. App. Div. 2004).

F. Excessive Sentence

Finally, petitioner claims that his sentence of two concurrent indeterminate terms of 25 years to life imprisonment is harsh and excessive.

It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); *see also Stallings v. Woods*, No. 04 Civ. 4714 (RLM), 2006 WL 842380 at *22 (E.D.N.Y. March 27, 2006) (denying excessive sentence claim on the merits, despite petitioner's failure to

exhaust it, where petitioner's sentence fell within the range prescribed by state law).

Petitioner was convicted of two counts of Murder in the Second Degree, which carries a sentencing range with a minimum of 15 years to life imprisonment and a maximum of 25 years to life imprisonment. N.Y. PENAL LAW § 70.00(2)(a). Petitioner was sentenced to 25 years to life imprisonment and, as his sentence falls within the range established by state law, his claim is not cognizable for federal habeas corpus review. In any event, even if it were cognizable, there is nothing unduly harsh or excessive under the Eighth Amendment about petitioner's sentence in light of the proof at trial and the nature of the crimes for which he was convicted.

### III. CONCLUSION

Petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is DENIED. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 8, 2006
Central Islip, NY

\* \* \*

The petitioner, Mark Garrett, appeared *pro se*. The attorney for the respondent is Guy Arcidiacono, Esq., Assistant District Attorney, Karla Lato, Esq., Thomas J. Spota, Esq., District Attorney Suffolk County, 200 Center Drive, Riverhead, New York, 11901.